O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS LONDON, | CASE NO. 8:10-CV-379-JST (RNBx) |
| Plaintiff, | |
| vs. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| CALIFORNIA FINANCIAL GROUP INC., | |
| Defendant. | |

On March 31, 2010, Plaintiff Certain Underwriters at Lloyds, London filed this action against Defendant California Financial Group, Inc. d/b/a California Financial Services.  Plaintiff seeks a declaration from this Court, pursuant to 28 U.S.C. § 2201, that Plaintiff owes no obligations to Defendant, with respect to the lawsuit captioned as *Lehman Brothers Holding, Inc. v. California Financial Group, Inc. d/b/a California Financial Services*, Case No. SACV 09-0666 AG (MLGx), filed in the U.S. District Court for the Central District of California.  Specifically, Plaintiff seeks a declaration that it has no duty to defend or indemnify Defendant in said lawsuit.  The parties were given the opportunity to participate at oral argument, but chose to submit on the Court's tentative ruling.  Having reviewed the parties' papers, the Court GRANTS Plaintiff's Motion for Summary Judgment.

## I.  Background

In July 2005, Defendant was party to a Loan Purchase Agreement ("Purchase Agreement") with Aurora Loan Services, Inc. n/k/a Lehman ("Lehman"), in which Defendant sold mortgage loans to Lehman.  (Statement of Genuine Issues in Opposition to Plaintiffs' Separate Statement of Uncontroverted Facts ("Def.'s Facts"), Doc. 36-1, ¶¶ 1-2.)  Pursuant to the terms of the Purchase Agreement, under certain conditions, Defendant was required to "repurchase" mortgage loans it had previously sold to Lehman.  (*Id.* ¶ 4.)  Lehman exercised this option on six different loans, but Defendant allegedly refused to repurchase the loans.  (*Id.* ¶ 16.)  Lehman filed suit against Defendant in June 2009.  (*Id.* ¶ 16.)  Lehman's Amended Complaint alleges that Lehman purchased mortgage loans from Defendant pursuant to written contracts, that it "discovered that [Defendant] had breached representations, warranties and/or covenants" under the Purchase Agreement, and that Defendant failed and/or refused to repurchase the loans at issue.  (*Id.* ¶¶ 20-22.)  Lehman seeks damages for breach of contract and warranty, specific performance ordering Defendant to repurchase the loans at issue, and a declaration that Defendant is required to

1   repurchase the loans and compensate Lehman for all actual and consequential damages

2   resulting from the alleged breaches in the loans at issue.  (*Id.* ¶¶ 23-24.)  Specifically,

3   Lehman's complaint makes claims for: (1) Breach of Contract; (2) Specific Performance;

4   and (3) Breach of Express Warranty.  (*Id.* ¶ 19.)

5           Defendant applied for an insurance policy with Plaintiff on November 10, 2008.

6   (*Id.* ¶ 25.)  Plaintiff issued a Mortgage Bankers and Mortgage Brokers Professional

7   Liability Policy, No. MB59655, to Defendant, for a period beginning November 16, 2008

8   through 12:01 a.m. on November[1] 16, 2009 ("2008 Policy").  (*Id.* ¶ 27.)  The 2008 Policy

9   was a claims made and reported policy.  (*Id.* ¶ 28.)  Plaintiff issued another policy to

10  Defendant, for the period beginning November 16, 2009, and expiring at 12:01 a.m. on

11  November 16, 2010 ("2009 Policy").  (*Id.* ¶ 47.)  Importantly, the 2009 Policy contains

12  substantially the same relevant terms, conditions, exclusions, and definitions as the 2008

13  Policy.  (*Id.* ¶ 51.)  Of relevance to this case, exclusion (gg) from the 2008 Policy states:

14

15          With respect to the coverage afforded for your wrongful acts in

16          rendering or failing to render professional services, this policy

17          does not cover any claim:

18           (gg) arising out of or resulting, directly or indirectly, from any

19          insured's actual or alleged obligation:

20                  (1) To repurchase a loan; or

21                  (2) to provide indemnity with respect to a loan;  . . . .

22

23  (*Id.* ¶ 35.)

24

25

26          [1] There appears to be a typo present throughout the briefing identifying the expiration date for

27  the 2008 Policy as "February 16, 2009."  The Court notes that the record evidence substantiates
    that the actual date of expiration was in November, not February.

28

3

1

**II. Legal Standard**

2

3    In deciding a motion for summary judgment, the court must view the evidence in

4    the light most favorable to the non-moving party and draw all justifiable inferences in its

5    favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The court shall grant

6    summary judgment if the movant shows that there is no genuine dispute as to any material

7    fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A

8    factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of

9    fact could resolve the issue in the non-movant's favor, and an issue is "material" when its

10   resolution might affect the outcome of the suit under the governing law. *Anderson*, 477

11   U.S. at 248.  A party asserting that a fact cannot be or is genuinely disputed must support

12   the assertion by citing to particular materials in the record or showing that the materials

13   cited do not establish that absence or presence of a genuine dispute.  Fed. R. Civ. P.

14   56(c)(1).  Reference to the record may include citation to "depositions, documents,

15   electronically stored information, affidavits or declarations, stipulations (including those

16   made for purposes of the motion only), admissions, interrogatory answers, or other

17   materials."  Fed. R. Civ. P. 56(c)(1)(A).  The moving party bears the initial burden of

18   demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S.

19   317, 323 (1986).  The burden then shifts to the non-moving party to set out specific facts

20   showing a genuine issue for trial. *Id.* at 323.  "When the party moving for summary

21   judgment would bear the burden of proof at trial, it must come forward with evidence

22   which would entitle it to a directed verdict if the evidence went uncontroverted at trial."

23   *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

24   (internal quotation marks and citation omitted).

25

26

27

28

### III.    Discussion

Under California law, "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 846 P.2d 792, 795 (Cal. 1993).  "It is a settled rule that the insurer must look to the facts of the complaint and extrinsic evidence, if available, to determine whether there is a potential for coverage under the policy and a corresponding duty to defend." *Ameron Int'l Corp. v. Ins. Co. of Penn.*, 242 P.3d 1020, 1028 (Cal. 2011) (internal quotation marks and citation omitted); *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 176-77 (Cal. 1966) ("Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources.").  On the other hand, "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exch.*, 44 Cal. Rptr. 2d 272, 277 (Cal. Ct. App. 1995).

Here, the facts of Lehman's complaint make clear that the underlying lawsuit is based on Defendant's failure and/or refusal to repurchase loans Defendant sold to Lehman pursuant to the Purchase Agreement.  In order to prevail in an action seeking declaratory relief on the issue of the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Montrose Chem. Corp. of Cal. v. Superior Ct. of L.A.*, 861 P.2d 1153, 1161 (Cal. 1993).  Thus, to prevail on its Motion for Summary Judgment, Plaintiff must demonstrate that, as a matter of law, there is no possibility for coverage under the 2008 and 2009 Policies for any potential causes of action based on the facts set forth in Lehman's complaint.

1    Plaintiff argues that certain exclusions found in both the 2008 and 2009 Policies

2 independently preclude coverage for the claims made in the underlying lawsuit.[2] "In

3 general, interpretation of an insurance policy is a question of law and is reviewed . . . under

4 settled rules of contract interpretation." *Ameron*, 242 P.3d at 1024; *see also Safeco Ins.*

5 *Co. of Am. v. Robert S.*, 28 P.3d 889, 893 (Cal. 2001) ("Insurance policies are contracts

6 and therefore subject to the rules of construction governing contracts."). "A contract must

7 be so interpreted as to give effect to the mutual intention of the parties as it existed at the

8 time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636.

9 "When a contract is reduced to writing, the intention of the parties is to be ascertained

10 from the writing alone, if possible," *id.* § 1639, thus, "[t]he language of a contract is to

11 govern its interpretation, if the language is clear and explicit, and does not involve an

12 absurdity." *Id.* § 1638.

13    "An insurance policy provision is ambiguous when it is susceptible of two or more

14 reasonable constructions." *Ameron*, 242 P.3d at 1024. If the terms are ambiguous or

15 uncertain, the provision "must be interpreted in the sense in which the promisor believed,

16 at the time of making it, that the promisee understood it." Cal. Civ. Code § 1649. This

17 rule is not without limits, protecting only "the objectively reasonable expectations of the

18 insured." *Safeco*, 28 P.3d at 893 (citation omitted).

19    Plaintiff argues that the language of exclusion (gg) is conspicuous, plain, and clear.

20 Defendant argues that it is "confusing when read in the context of the broad insuring

21 clauses providing coverage for the sale of mortgage loans."[3]  (Def.'s Opp. at 6.)

22 _____

23    [2] Plaintiff also argues that the claims in the underlying lawsuit are outside the scope of the
2008 and 2009 Policies, because some claims were made prior to the first inception date of the

24 policies and the others were based on circumstances known to Defendant prior to the inception of
the policies.  Finally, Plaintiff argues that all of the claims of the underlying lawsuit were reported

25 late by Defendant, and are therefore precluded.  Because the Court concludes that, as a matter of
law, exclusion (gg) precludes all possibility for coverage under the 2008 and 2009 Policies, the

26 Court does not review Plaintiff's alternative arguments.

27    [3] Defendant also argues that there was not fair and conspicuous notice of the exclusions,
because they were in "small print" and not found until page 14 of the 2008 Policy, such that "[i]n

28    (footnote continued)

6

1   Defendant relies on *Safeco* to argue that the Court should disregard exclusion (gg) because

2   the language is so vague and overbroad that it is incapable of having any meaning until

3   after a claim is made.  The Court concludes that the undisputed facts readily distinguish

4   this case from *Safeco*.

5           In *Safeco*, the provision at issue excluded coverage "arising out of any *illegal* act

6   committed by or at the direction of an insured."  28 P.3d at 893.  The Court found that the

7   term "illegal" was ambiguous because it could mean "any act prohibited by law" or "a

8   violation of criminal law."  *Id.*  First, the court concluded that the insurer could have made

9   the provision an exclusion of criminal acts, but chose to make the broader exclusion for all

10  illegal acts; therefore, the court held that the broader meaning would apply in the case.  *Id.*

11  Second, the court concluded that in making an exclusion that applied to all illegal acts, the

12  insurer's exclusion was so broad that it made the liability coverage "practically

13  meaningless."  *Id.* at 894.  Specifically, the court noted that a violation of "any law" would

14  include the law governing negligence, such that the policy would appear to exclude acts of

15  negligence; this would be at odds with the policy's coverage of accidents, which the court

16  held included negligence.  *Id.*  The court, finding that it could not reasonably give meaning

17  to the illegal act exclusion under the established rules of construction of a contract, held

18  that the exclusion must itself "be rejected as invalid."  *Id.* at 895.

19          Here, there is no similarly ambiguous term in exclusion (gg).  Although the 2008

20  and 2009 Policies appear to cover the "selling or servicing" of mortgage loans, exclusion

21  (gg) deals with the "repurchase" of mortgage loans.  Thus, exclusion (gg) carves out from

22  the coverage a type of sale or service on a mortgage loan to which the 2008 and 2009

23  Policies will not apply.  This is, indeed, the very definition of an exclusion.

---

25  order to find the exclusion, the insured would be required to wade through a list of *32 prior*

26  *exclusions*."  (Def.'s Opp. at 6.)  Defendant's argument is not persuasive.  The exclusions are in
the same size font as the entire policy.  In addition, the exclusions are not hidden within the policy

27  or tacked on as an addendum, but rather are the third of twenty-five sections in the policy.  There
is no evidence that Plaintiff attempted to hide the exclusions either through font size or location

28  within the policy itself.

1

2 **IV.    Conclusion**

3

4          For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary

5 Judgment.

6

7

8 DATED: March 30, 2011                    **<u>JOSEPHINE STATON TUCKER</u>**

9                                          UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28